**In re STERLING.**
**Patent Appeal No. 3288.**

Court of Customs and Patent Appeals.
May 31, 1934.

Jack A. Schley, of Dallas, Tex., and Charles H. Lane and Munson H. Lane, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application here involved relates to bank checks and stubs thereof and contains four claims of which Nos. 1 and 2 are illustrative:

"1. A sheet of paper having a line upon which the same is adapted to be torn to form a stub and a savings check, said check having a printed column at one end including a plurality of consecutive transverse spaces for the entry of savings amounts, and totaling spaces at the bottom of said column, said check having instructions to transfer the totals of the column to the credit of the drawer of the check, said check being printed with a line for the signature of the drawer and with the usual data of a savings check.

"2. A check book having a plurality of stubs and checks detachably attached to said stubs, each stub being provided with data including a line designated balance brought forward, a line designated amount deposited, a line beneath the last named line designated total, a line beneath the last named line designated less check, a line beneath the last named line designated balance, a line beneath the last named line designated less cents for savings, and a line beneath the last named line designated balance carried forward, and a savings check and stub bound in the book under the above named stubs and checks, said savings check having data for writing a savings check and provided with a separate space for each preceding stub for writing the amount of the less cents for savings from each preceding stub."

All the claims were rejected by the Examiner of the United States Patent Office upon prior art, and also upon the ground that they do not cover subject-matter which falls within Rev. St. § 4886 (35 USCA § 31), and hence cannot be protected by a patent. Each of claims 2, 3, and 4 was also held to cover an aggregation, and they were disallowed for that additional reason.

Upon appeal the Board of Appeals approved all the foregoing grounds of rejection and affirmed the decision of the Examiner. From the decision of the Board, the instant appeal to this court was taken.

The references cited are a patent to Watrous, No. 1,370,936, of March 6, 1921, and a patent to Sterling (applicant herein), No. 1,423,744, of July 25, 1922.

The claims themselves are clear in their description of the alleged invention. Two types of checks with stubs are shown in the drawings, as figures 1 and 2, respectively. The first is an ordinary bank check with stub, the stub having, in addition to the usual lines showing "Bal. bro't forward," "Amt. deposited," etc., a line, or space, for noting the amount which it is desired to have transferred from the depositor's regular checking account to his savings account. This line carries the printed words, "Less Cents for Savings." Figure 2 shows a check designed for use in directing transfer of funds to the savings account. The drawing itself shows the stub portion of the sheet without printed matter thereon. The check portion of same has upon it the printed words, "Save The Odd Cents," over a blank rectangle, and below the rectangle is the printed form for use in directing transfer by the bank.

Exhibits of sheets and of check books, said to comprise samples of the commercial form of the claimed invention, were placed in evidence. These show different forms of printed matter on different savings checks and stubs thereof.

In a third figure of appellant's drawings there is shown an arrangement whereby the respective checks and stubs depicted in figures 1 and 2 are bound together in a check book.

The physical exhibits of these complete check books presented show that the idea is to insert a "savings" check with its stub, after a batch of "regular" checks. In one instance the savings check follows a batch of 12 regular checks.

The device, it may be conceded, presents an ingenious and convenient arrangement for those desiring to do business in the manner which it suggests.

The drawings of the patent to Watrous disclose a printed form of "savings" check and stub thereof, bound in usual check book form, with a number of ordinary checks. The printed matter on the savings sheet differs from that on the sheet of applicant, but physically the sheet is much the same. The specification of Watrous recites: "My invention contemplates the insertion at intervals in the check book of a novel form of savings transfer blank or form 9, having certain subject matter thereon which when

properly filled in and signed, by a person having a checking account and a savings account with the bank issuing the same, becomes an order on the bank to transfer a desired sum of money from the checking account of the signer to his savings account. * * * "

The stubs of the conventional checks of the Watrous patent do not seem to show any space or line for noting "savings," nor do the stubs of his "savings" checks contain any "odd cents" line.

The drawings of the patent to Sterling show conventional checks with stubs, having therebetween a "coupon" for use in directing transfer of funds to a savings account. The coupon is rendered easily detachable by having the usual perforated lines between it and the stub, and between it and the check. The stub in this patent has a line for noting the amount ordered transferred by the corresponding savings coupon.

It seems perfectly evident to us, from the disclosures of the prior art above recited, that appellant does not here present anything patentable thereover.

Considering claim 1, supra, by itself, it being confined solely to the sheet for the savings check and stub, the physical structure is practically the same as the corresponding physical structure of Watrous. The language printed upon the respective checks and stubs differs, but we have held in a number of cases that the mere arrangement of printed matter on a sheet or sheets of paper does not constitute patentable subject-matter. In re Russell, 48 F.(2d) 668, 18 C. C. P. A. 1184, and In re Reeves, 62 F.(2d) 199, 20 C. C. P. A. 767, are cases in point, and, if arrangement of printed matter may not constitute patentable novelty, it would seem obvious that the substance or language of that which is printed may not do so.

It is to be borne in mind that, so far as the conventional or "regular" checks and stubs used in appellant's folder, or check book, are concerned, there is no claim for them per se. Admittedly they are old in the art. The stub of the check in appellant's own prior patent, cited as a reference, shows all the usual lines and printed matter, and, in addition thereto, a line for inserting the amount transferred to the savings account. Indeed, the conventional check and stub sheets of appellant's book here at issue are substantially the same as those in his prior patent, except the patent contains the "coupon" feature above described.

The only way in which the conventional check is here involved is as a feature or element of the alleged combination claimed in claims 2, 3, and 4.

These three claims are for the check book, or folder, comprising the conventional checks and savings checks bound together, the savings checks inserted at regular intervals as above described. This arrangement seems to have been the essential feature of the teaching of Watrous, as expressed in the language of his specification quoted, supra.

The rejection of the claims upon prior art seems to us to have been correct.

As for the second ground of rejection, viz., that the subject-matter does not come within the purview of section 4886, Revised Statutes (35 USCA § 31), we deem it proper to say that we understand the Board's holding thereon applies solely to the printed matter upon the sheets, and, under this interpretation, we are in agreement therewith. Such holding is in entire accord with the rule announced by this court and others, as well as by the tribunals of the Patent Office, in a number of recent cases. In re Dixon, 44 F.(2d) 881, 18 C. C. P. A. 711; In re Clark, 58 F.(2d) 455, 19 C. C. P. A. 1166; Boggs v. Robertson (Dis. Col. Sup. Ct.) 13 U. S. Pat. Q. 214.

The foregoing cases and numerous cases cited therein are authorities for holding that patentable novelty cannot be predicated upon printing alone, but must reside in physical structure.

The opinion in the frequently cited case of Cincinnati Traction Co. v. Pope (C. C. A.) 210 F. 443, discussed by us in the case of In re McKee, 64 F.(2d) 379, 20 C. C. P. A. 1018, has, we think, been sometimes misunderstood or misconstrued. The street railroad transfer ticket there involved had printed matter upon it arranged so as to adapt it readily and conveniently to the definite uses described in the opinion, but the court did not rest its decision upholding the validity of the patent upon the printing, or the arrangement thereof, but stated specifically: "The device of the patent clearly involves physical structure. The claims themselves are, in a proper sense, limited to such structure."

If the check and stub structure here involved presented some new and useful physical form with the printed matter adjusted to such form, as was the situation with reference to the transfer ticket, a different question would confront us, in view of the doctrine of the Traction Co. Case, supra, and kindred cases, such as Rand, McNally & Co. v. Exchange Scrip-Book Co. (C. C. A.) 187 F. 984; Benjamin Menu Card Co. v. Rand,

McNally & Co. et al. (C. C.) 210 F. 285, and others which might be cited, but such is not the situation. The general physical structure of appellant is admittedly old, and such modifications in the adjustment of printed matter thereto as he discloses are mere obvious arrangements of the printing.

Counsel for appellant in argument before us, after asserting that "Watrous has no new 'physical structure' in the Patent Office use of the term," asks, "Why should a patent be granted to Watrous and a patent to Sterling be refused?"

There are two obvious answers to the query. First, the validity of the Watrous patent is not involved here. So far as this court is concerned, it must, in this proceeding, be taken as valid. So taking it, it constitutes an anticipation of appellant's claims as to the purely physical structure. Second, were we at liberty to proceed upon the hypothesis that the patent is invalid because not presenting patentable matter, appellant's claims should be now rejected for the same reason.

The same reasoning applies to what is said of appellant's own prior patent in comparison with his instant application.

We do not deem it necessary to pass upon the question of aggregation.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.